UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| LINDA GUZZO,<br><br>        Plaintiff,<br><br>v.<br><br>CONNECTICUT STATE COLLEGES AND UNIVERSITIES,<br><br>        Defendant. | Civil Action No. 3:21-cv-254 (CSH)<br><br>**MARCH 28, 2022** |

### MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

**HAIGHT, Senior District Judge:**

Plaintiff Linda Guzzo brings this action against her employer, Connecticut State Colleges and Universities ("defendant" or "CSCU"). Guzzo's amended complaint, filed with this Court on June 29, 2021, alleges that, while she was employed by defendant, defendant discriminated and retaliated against her because she exercised rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2615(a)(2) and 2615(b). *See* Am. Compl. ¶ 52, ECF No. 21.

Defendant, a state university system, brings this motion to dismiss for lack of subject matter jurisdiction on the grounds that FMLA claims against it under the self-care provision are barred by Eleventh Amendment immunity. *See* Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. 2, ECF No. 24-1.

For the reasons stated below, the motion to dismiss is **GRANTED**.

### I. PROCEDURAL BACKGROUND

Plaintiff Guzzo initiated this case on February 26, 2021 with a complaint containing five counts, bringing claims pursuant to the Age Discrimination in Employment Act ("ADEA"), 29

U.S.C. § 21 *et seq.*; the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.*; and the FMLA, 29 U.S.C. § 2601 *et seq. See generally* Compl., ECF No. 1. These claims were all brought against defendant CSCU. Defendant thereafter moved to dismiss four of these five counts—namely, the ADEA claims and the CFEPA claims—as barred by the Eleventh Amendment. *See generally* Mot. to Dismiss, ECF No. 13; Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 13-1.

Rather than oppose defendant's motion, plaintiff moved to amend the complaint, removing the ADEA and CFEPA claims while retaining the FMLA claim. P.'s Mot. for Leave to File an Am. Compl. 1, ECF No. 19. The Court permitted plaintiff's proposed amendment and denied as moot defendant's motion to dismiss. Electronic Order, ECF No. 20.

Defendant has now moved to dismiss the *amended* complaint, making the same argument with respect to the remaining FMLA claim that it made regarding the others in its initial motion to dismiss—namely, that the Eleventh Amendment grants CSCU immunity to suit under the FMLA self-care provision. Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. 2.

## II. FACTUAL BACKGROUND

In her amended complaint, plaintiff alleges the following facts.

Plaintiff has been an employee of CSCU, an agency of the State of Connecticut, since about 1984. Am. Compl. ¶¶ 1, 7–8. Plaintiff's titles have included Director of Continuing Education Business Programs; Coordinator, Business and Industry Services; Director of Business & Industry Services; Interim Associate Dean of Continuing Education; Associate Dean of Continuing Education; and Dean of Workforce Development & Continuing Education. *Id.* ¶ 9. She has experienced a serious health condition at all times relevant to the amended complaint, *id.* ¶ 6, and has limited mobility because of a workplace injury, *id.* ¶ 15.

Since 2018, plaintiff has been a member of the "Cabinet" reporting directly to Duncan Harris, an executive at Capital Community College.[1] *Id.* ¶ 11. In May and June 2018, Harris told plaintiff that if she applied for the position of Interim Academic Dean of Capital Community College, she would not be considered because she was "near retirement." *Id.* ¶ 13–14. Beginning in May 2019, Harris and his Cabinet participated in several off-campus events at which plaintiff's physical limitations "were not considered," forcing plaintiff to draw attention to herself by using an elevator rather than stairs, walking long distances, and using high-rise collaborative seating specifically required by Harris. *Id.* ¶ 15. In May and June 2019, Harris again told plaintiff that if she applied for an open position—this time, for the role of Academic and Student Services Dean for Capital Community College—she would not be considered because she was "near retirement." *Id.* ¶ 16.

In July 2019, Harris held a meeting with his Cabinet. *Id.* ¶ 17. Harris praised younger members of the Cabinet with comments such as, "Miah[,] you will become a president. Jason[,] you will earn your doctorate. Josephine[,] you will teach." *Id.* When he came to plaintiff, Harris commented that she would be walking out the door with a walker, and proceeded to physically mimic her doing so. *Id.* ¶ 18.

In September 2019, plaintiff was on an approved FMLA leave of absence. *Id.* ¶ 19. Harris took several actions during her leave of absence that substantially hindered her ability to communicate with her colleagues. *Id.* ¶¶ 19–25. While plaintiff was on leave, Harris moved her office to a location remote from her colleagues; falsely informed external partners that they were not to communicate with plaintiff because she was retiring or otherwise not returning to work;

---

[1] Capital Community College is one of CSCU's seventeen campuses across Connecticut and offers a two-year degree program. CSCU CAMPUSES, https://www.ct.edu/cscu (last visited Mar. 25, 2022). *See generally Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012) (courts may "take judicial notice of relevant matters of public record").

3

removed plaintiff from Cabinet group texts that were the standard form of communication among the management team; and generally "cut off" her communications with the Cabinet, campus staff and faculty, and her own staff. *Id.* ¶¶ 20–25. When plaintiff returned from her approved FMLA leave, she found that she had not yet been assigned to a new office and that all of her files and personal belongings from her old office had been removed. *Id.* ¶¶ 24–25. When she eventually received an office assignment, she discovered that the office had no working computer, no heat, and poor security, among other issues. *Id.* ¶ 25. Despite plaintiff's efforts to find her files—including by cleaning out, at Harris's instruction, an unused work area that Harris said might contain the files—few of her files and none of her personal belongings were ever found. *Id.* ¶ 25–27.

In 2020, CSCU accepted applications for three vacant positions as Chief Workforce Development Officer, including one in the region that includes Capital Community College. *Id.* ¶ 28. Harris and another individual interfered with the normal chain of communication that would have alerted plaintiff to the vacancies in order to prevent her from applying. *Id.* ¶ 29. Plaintiff nonetheless learned of the vacant positions and applied, but was not selected, despite being the most experienced candidate. *Id.* ¶ 30–31.

Plaintiff, a Dean of Workforce Development and Continuing Education at the time, was not the only person with that title who applied; however, plaintiff was the only person with that title who was not selected. *Id.* ¶ 32. Instead, Diane Bordonaro was selected for the third vacant position despite previously holding a position subordinate to the dean. *Id.* Plaintiff had listed Harris as a required reference for the position along with other references, including former presidents and executives. *Id.* ¶ 33. None of her other references were contacted. *Id.* Plaintiff also applied for

the position of Associate Vice President of Student Success Management, for which she was not selected despite being qualified. *Id.* ¶ 35.

Beginning in August 2020, Harris and Bordonaro together took actions allegedly designed to remove plaintiff's responsibilities, diminish her position, and humiliate her. *Id.* ¶ 36. They transferred responsibility for three initiatives plaintiff had created and successfully led to other, less qualified employees. *Id.* ¶ 37. They ignored her requests to serve on committees and projects and participate in professional development opportunities and refused to provide her with requested documents that had been provided to other employees. *Id.* ¶¶ 39–40. Harris removed plaintiff's responsibility for managing recently awarded grants, excluded her from communications with her own staff, permitted other individuals to give directives to her staff, modified contracts for her staff without consulting her, and actively discouraged other employees and external partners from communicating with her. *Id.* ¶ 38, 41–43.

Bordonaro likewise sidestepped the ordinary chain of command by assigning projects and giving directions directly to plaintiff's staff, scheduling meetings with plaintiff's staff without informing plaintiff, excluding plaintiff from meetings, asking in meetings if plaintiff knew how to perform basic tasks, and informing external partners not to communicate with plaintiff. *Id.* ¶ 47–48. At one point, Bordonaro made the independent decision to schedule a major meeting to discuss the regional plan for workforce development and continuing education on a date when plaintiff was on vacation, and refused plaintiff's requests to reschedule, record, or provide notes of the meeting. *Id.* ¶ 44–46.

When plaintiff was on vacation and work arose on time-sensitive and highly visible programs requiring her response, Bordonaro and Harris refused to adjust her vacation time so that she could work on them, resulting in her working for multiple days while on vacation. *Id.* ¶ 49.

5

CSCU also repeatedly ignored plaintiff's safety concerns and, in October 2020, rescinded her annual salary increase. *Id.* ¶ 50–51.

Plaintiff alleges that CSCU's actions constitute interference with her FMLA rights—specifically, in the form of discrimination—as well as retaliation for her exercise of those rights in violation of the FMLA, 29 U.S.C. §§ 2615(a)(2) (discrimination) & 2615(b) (retaliation). Am. Compl. ¶¶ 52–54. She alleges further that this conduct "was willful and done with the intent to coerce [her] into leaving her employment." *Id.* ¶ 53. (Plaintiff remains, as of the time the amended complaint was filed, an employee of CSCU. *Id.* ¶ 8.) Underlying these claims is plaintiff's approved leave of absence around September 2019 because of an unnamed serious health condition, pursuant to her entitlement under the FMLA, *id.* § 2612(a)(1)(D) (the self-care provision). *See* Am. Compl. ¶¶ 20–27.

While plaintiff never names the self-care provision in her amended complaint, or the details surrounding her FMLA leave, she does not set forth any allegations regarding the medical condition of a family member such that her FMLA leave could be construed as caregiver leave under the FMLA's family-care provisions, 29 U.S.C. § 2612(a)(1)(A)–(C), nor does her memorandum in opposition to the motion to dismiss take issue with defendant's characterization of the relevant claim as falling under the self-care provision. *Compare* Pl.'s Mem. Opposing Def.'s Second Rule 12(b)(1) Mot. to Dismiss, ECF No. 30 ("Pl.'s Mem."), *with* Mem. of Law in Supp. of Mot. to Dismiss Am. Compl. 2–3, ECF No. 24-1. *See generally Coleman v. Ct. of Appeals of Md.*, 566 U.S. 30, 34 (2012) (explaining the distinction between the family-care and self-care provisions).

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(1), a case is properly dismissed where the court lacks "statutory or constitutional power to adjudicate the case." *Perez v. Conn. Dept. of Correction Parole Div.*, No. 3:13-CV-150 (JCH), 2013 WL 4760955, at *2 (D. Conn. Sept. 4, 2013) (citing *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008)); Fed. R. Civ. P. 12(b)(1). The standard of review for a 12(b)(1) motion is "substantively identical" to the standard of review under 12(b)(6) for failure to state a claim upon which relief can be granted. *Kuck v. Danaher*, 822 F.Supp.2d 109, 123–24 (D. Conn. 2011). "In considering such a motion, the Court generally must accept the material factual allegations in the complaint as true. The Court does not, however, draw all reasonable inferences in the plaintiff's favor." *Hijazi v. Permanent Mission of Saudi Arabia to United Nations*, 689 F. Supp. 2d 669, 670 (S.D.N.Y. 2010) (citation omitted), aff'd, 403 F. App'x 631 (2d Cir. 2010).

While the burden usually falls to the plaintiff to prove subject matter jurisdiction, where a "defendant official or governmental entity asserts the Eleventh Amendment as the basis of the 12(b)(1) motion, the burden falls to that entity to prove its entitlement to dismissal on the grounds of immunity from suit." *Perez*, 2013 WL 4760955, at *2 (citing *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 239 (2d Cir. 2006)).

### IV. DISCUSSION

Defendant raises for the first time in its motion to dismiss the amended complaint an argument that plaintiff's FMLA claim is barred by Eleventh Amendment immunity. The Eleventh Amendment operates in much the same way as subject matter jurisdiction, meaning it may be raised at any time. *See Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267 (1997) ("The [Eleventh] Amendment . . . enacts a sovereign immunity from suit, rather than a non-waivable

limit on the Federal Judiciary's subject-matter jurisdiction."); *see also* U.S. CONST. Art. III § 2; U.S. CONST. amend. XI.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Supreme Court has interpreted the Eleventh Amendment also to bar suits against a state by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974) ("While the Amendment by its terms does not bar suits against a State by its own citizens, this Court has consistently held that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State."). This bar to suit in federal courts extends not only to the state itself but also to any entity that is deemed to be an "arm of the State." *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). Consequently, the Second Circuit has held that Eleventh Amendment immunity extends to state universities, such as defendant. *See, e.g.*, *Garcia v. S.U.N.Y. Health Sci. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) ("[f]or Eleventh Amendment purposes, SUNY is an integral part of the government of the State [of New York] and when it is sued the State is the real party") (quoting *Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990)); *Tomasko v. W. Conn. State Univ.*, Docket No. 3:11-CV-1020 (CSH), 2012 WL 877293, at *2 (D. Conn. Mar. 14, 2012).

The immunity contemplated by the Eleventh Amendment is not absolute. There are two ways in which a state may be brought into federal court: (1) Congress may abrogate a state's sovereign immunity through an unequivocal expression of its intent to do so when acting under Section 5 of the Fourteenth Amendment, *see Seminole Tribe v. Florida*, 517 U.S. 44, 54–55 (1996); *Green v. Mansour*, 474 U.S. 64, 68 (1985); or (2) a state may waive its immunity and agree to suit

in federal court, see *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 (1985). Additionally, the Eleventh Amendment permits a plaintiff to sue a state official in his or her official capacity, so long as the plaintiff seeks only prospective declaratory or injunctive relief to remedy an ongoing violation of federal law. *Ex parte Young*, 209 U.S. 123, 159–60 (1908). *See also Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007); *Fresh Start Substance Servs., LLC v. Galvin*, 599 F. Supp. 2d 279, 283 (D. Conn. 2009).

In the case at bar, plaintiff asserts a claim under the FMLA naming only CSCU as a defendant. Am. Compl. ¶ 1. CSCU is an agency of the State of Connecticut, *id.*, and therefore is immune from suit unless (1) Congress validly abrogated state sovereign immunity in the FMLA's self-care provision, or (2) Connecticut has waived its immunity either generally, such as by statute, or through its litigation conduct in this particular case.

**A. No Abrogation of Sovereign Immunity**

Plaintiff asserts claims of discrimination and retaliation arising under the FMLA's self-care provision. The Supreme Court has held that with respect to the FMLA's self-care provision, 29 U.S.C. § 2612(a)(1)(D), Congress did not validly abrogate states' immunity from suit, because Congress failed to "identify a pattern of constitutional violations and tailor a remedy congruent and proportional to the documented violations." *Coleman*, 566 U.S. at 43. While the Supreme Court had previously held that Congress may subject the states to suit under the *family*-care provision of § 2612(a)(1)(C) because the family-care protection was tailored to remedy patterns of sex discrimination, *Nevada Dept. of Human Resources v. Hibbs*, 538 U.S. 721, 730–32 (2003), the Court in *Coleman* concluded that self-care policies are not similarly tailored to actual issues of sex discrimination. 566 U.S. at 36.

This reasoning extends to the instant claims brought under 29 U.S.C. § 2615 because the underlying exercise of right in which plaintiff engaged or sought to engage was the FMLA's self-care provision. *See Tiffany v. N.Y. State Veteran's Home*, No. 3:15-cv-0108 (MAD/DEP), 2015 WL 4460968, at *11 (N.D.N.Y. July 21, 2015) (dismissing on Eleventh Amendment immunity grounds a claim of retaliation against employee for requesting leave due to his medical condition); *accord Bryant v. Tex. Dep't of Aging & Disability Servs.*, 781 F.3d 764, 768–69 (5th Cir. 2015) (concluding that Eleventh Amendment immunized state from retaliation claim implicating the self-care provision).

Accordingly, I hold that Congress has not validly abrogated state sovereign immunity with respect to the claims raised in the amended complaint.

**B. No Waiver of Sovereign Immunity**

The amended complaint can therefore survive only if Connecticut has waived its Eleventh Amendment immunity. A state may waive its Eleventh Amendment immunity either generally, e.g., by statute, or by its affirmative litigation conduct in a particular case or by statute. *See Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241, 246–47 (1985) (describing waiver through state statute, constitutional provision, or participation in a federal program validly conditioned upon waiver); *Lapides v. Bd. of Regents*, 535 U.S. 613, 619 (2002) (describing waiver through affirmative litigation conduct).

As a general matter, Connecticut has not waived its sovereign immunity with respect to the FMLA. *See Serafin v. Conn. Dept. of Mental Health and Addiction Servs.*, 118 F. Supp. 2d 274, 278 n.6 (D. Conn. 2000) (concluding that Connecticut laws guaranteeing citizens' federal rights, including their rights under the FMLA, do not constitute clear waiver of sovereign immunity).

However, plaintiff argues that defendant has waived the immunity defense in this specific case through its affirmative litigation conduct—specifically, through its failure to either raise the defense in its first motion to dismiss or object to plaintiff's amending the complaint to include only the FMLA claim. Pl.'s Mem. 6–7.

Courts have found waiver of Eleventh Amendment immunity based on litigation conduct in circumstances where the state has made a "voluntary appearance in federal court." *Lapides*, 535 U.S. at 613; *see also In re Charter Oak Assocs.*, 361 F.3d 760, 767 (2d Cir. 2004). To constitute waiver, litigation conduct must evince a "'clear' indication of the State's intent to waive its immunity." *Id.* at 620, 622. Mere presence as a defendant in federal court does not suffice, *id.*; neither does the belated assertion of an immunity defense, *McGinty v. New York*, 251 F.3d 84, 94 (2d Cir. 2001), participation in an Equal Employment Opportunity Commission proceeding, *id.*, or a failed motion to intervene, *Gulino v. Bd. of Educ. of the City School District of N.Y.*, 96 Civ. 8414, 2016 WL 7320775, at *6–8 (S.D.N.Y. July 18, 2016) (adopted by *Gulino v. Bd. of Educ. of the City School District of N.Y.*, 96 Civ. 8414 (KMW), 2016 WL 7243544, *1 (S.D.N.Y. Dec. 14, 2016)). Rather, actions of the kind that constitute waiver include a state's removal of a case to federal court, *Lapides*, 535 U.S. at 620; a state's *successful* motion to intervene, *Clark v. Barnard*, 108 U.S. 436, 447–48 (1883); and the failure to assert an immunity defense for two years into an administrative remedy process and after a finding on the merits, *New Hampshire v. Ramsey*, 366 F.3d 1 (1st Cir. 2004).

Defendant's failure to raise the Eleventh Amendment defense with respect to this claim in its initial motion to dismiss—particularly when it did raise that defense with respect to the other four claims—may have delayed the resolution of this case, but it does not rise to the level of affirmative litigation conduct found in the Second Circuit to constitute a waiver of Eleventh Amendment

immunity. "[T]he Supreme Court and [the Second Circuit] have repeatedly held that a state may assert Eleventh Amendment sovereign immunity at any time during the course of proceedings," because it is fundamentally a jurisdictional defect. *McGinty*, 251 F.3d at 94 (citing *Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) and *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 n.8 (1984)).

*Lapides*, which held that a state's removal of a case to federal court constitutes waiver of its Eleventh Amendment immunity, does not change this outcome. The Supreme Court partially relied in that case on the reasoning that allowing a defendant to invoke federal jurisdiction without the concomitant immunity waiver "would permit States to achieve unfair tactical advantages[.]" *Lapides*, 535 U.S. at 613–14. Here, however, CSCU has *not* voluntarily invoked federal jurisdiction, and under Second Circuit precedent, its delay in raising the Eleventh Amendment argument with respect to this claim cannot be construed as unfair or prejudicial, even if raising the defense in its first motion to dismiss "might have resulted in earlier dismissal, sparing Plaintiff[] some burden and expense." *Beaulieu v. Vermont*, 807 F.3d 478, 482, 491 (2d Cir. 2015) (finding no prejudicial conduct where defendants filed an initial motion to dismiss that did not assert a sovereign immunity defense, filed an answer that did not do so, expressly stated their intention *not* to assert Eleventh Amendment immunity in an interrogatory response, and then—three months after that interrogatory response and more than two years after the filing of the lawsuit—amended their response to state their intention to present a sovereign immunity defense).

The Court finds no reason to deprive Connecticut of sovereign immunity, or to deem that immunity waived. Accordingly, the claim against CSCU is dismissed under the Eleventh Amendment.

## V. CONCLUSION

For the reasons discussed above, the motion to dismiss the amended complaint is therefore **GRANTED**.

Plaintiff's opposition to the motion requests permission to amend to (1) name individual defendants in their official capacities against whom she would seek injunctive relief, pursuant to *Ex parte Young*, 209 U.S. at 155–56; and (2) add a claim under the Rehabilitation Act of 1973, 29 U.S.C. § 794. Pl.'s Mem. 8–9. Plaintiff, however, does not identify the defendants she would name or provide sufficient detail regarding her Rehabilitation Act claim for this Court to decide the matter concurrently with the motion to dismiss. *See id.* Should plaintiff wish to proceed with these amendments, she must file a second motion to amend the complaint, adhering to the Local Rules. *See* D. Conn. Civ. R. 7(f).[2] In so doing, plaintiff must name all defendants, specify whether individual defendants are being sued in their official or personal capacities, and identify the precise nature of the relief sought against each defendant. Plaintiff may include a memorandum of law detailing why such amendment would not be futile.

It is SO ORDERED.

Dated: New Haven, CT
March 28, 2022

*/s/ Charles S. Haight, Jr.*
CHARLES S. HAIGHT, JR.
Senior United States District Judge

---

[2] The local rule states: "Any motion to amend a party's pleading under Fed.R.Civ.P. 15(a) that requires leave of court shall (1) include a statement of the movant that: (i) the movant has inquired of all non-moving parties and there is agreement or objection to the motion; or (ii) despite diligent effort, including making the inquiry in sufficient time to afford non-movant a reasonable opportunity to respond, the movant cannot ascertain the position(s) of the non-movant(s), and (2) in cases in which the movant is represented by counsel, be accompanied by both a redlined version of the proposed amended pleading showing the changes proposed against the current pleading and a clean version of the proposed amended pleading." *Id.*